663 P.2d 382

**Nola BOUGHTON, widow of Roland Wallace Boughton, Deceased, Plaintiff-Appellee, Cross-Appellant,**

v.

**WESTERN NUCLEAR, INC., a Delaware corporation, and United States Fidelity and Guaranty Company, its insurer, Defendants-Appellants, Cross-Appellees.**

**No. 6012.**

Court of Appeals of New Mexico.

April 26, 1983.

George W. Kozeliski, Glascock, McKim, Head & Kozeliski, P.C., Gallup, for plaintiff-appellee.

Hal Simmons, Albuquerque, for defendants-appellants.

## OPINION

WALTERS, Chief Judge.

Plaintiff's decedent was killed as a result of accidental injury arising out of and in the course of his employment with defendant Western Nuclear, Inc. The compensation insurer paid death benefits to plaintiff under the Workmen's Compensation Act, NMSA 1978, §§ 52–1–1, et seq., upon her husband's death. She then petitioned for a lump sum award of all benefits due under the Act.

The trial court awarded a lump sum of $95,990.86 as remaining benefits due to plaintiff, but denied her claim for an additional 10% penalty on the alleged failure of the employer to provide a safety device. NMSA 1978, § 52–1–10.

Defendants appeal the awarding of benefits in lump sum; plaintiff cross-appeals the trial court's denial of her request for ten percent increase.

The issue on appeal is whether the trial court abused its decretion in awarding plaintiff's worker's compensation benefits in a lump sum. On cross-appeal, it is whether plaintiff is entitled to a ten percent increase in the judgment under § 52–1–10. We affirm on both issues.

■ 1. The award of a lump sum, rather than periodic payments, in a worker's compensation action is the exception rather than the rule. *Padilla v. Frito-Lay, Inc.,* 97 N.M. 354, 639 P.2d 1208 (Ct.App.1981). Authorization for lump sum awards is found at NMSA 1978, § 52–1–30 B. Plaintiff has the burden of showing that a lump sum award is in her best interest, and that failure to award a lump sum would create a manifest hardship where such relief is essential to protect the claimant and her family from want or privation, to facilitate the production of income for the claimant, or to help claimant in a rehabilitation program. *Id.*

■ Proof that a lump sum award is in the best interest of the recipient will not justify such an award if to do so would undermine the public policy which the statute is intended to promote. *Spidle v. Kerr-McGee Nuclear Corp.,* 96 N.M. 290, 629 P.2d 1219 (1981). The policy is to protect the recipient of the payments against want and to avoid her becoming a public charge. *Codling v. Aztec Well Servicing Co.,* 89 N.M. 213, 549 P.2d 628 (Ct.App.1976).

■ Upon presentation of evidence showing need according to the above standards, the matter is vested in the trial court's discretion whether to grant a lump sum award. *Spidle v. Kerr-McGee Nuclear Corp., supra.* Plaintiff testified that she wanted to purchase a house and raise her daughter in a home (rather than an apartment) environment; that she hoped to attend nursing school; and that her daughter's physical condition might require large expenditures of money for future medical care.

The trial court made the following relevant findings of fact:

6. The Plaintiff is the surviving widow of the decedent, ROLAND WALLACE BOUGHTON, and she and the decedent had one daughter, Nicole, present age four (4). The Plaintiff and her daughter are presently living in an apartment complex in New Haven, Indiana, and are paying $250.00 per month rent. The Plaintiff's present monthly income consists of $490.00 in Social Security benefits payable to her, the sum of $490.00 in Social Security benefits payable to her daughter and the sum of $886.00 in workmen's compensation benefits.

7. The Plaintiff and her deceased husband had planned a new home before his death because of their desire to raise their daughter in a home environment. The present residence of the Plaintiff is an apartment complex and it would be in the best interest of the Plaintiff and her daughter to own a home.

8. The Plaintiff, since her husband's death, has set aside life insurance benefits of approximately $40,000.00 to be used in case of major medical problems to her daughter or other unforeseen future needs.

9. The Plaintiff is also desirous of attending nursing school and later receiving a specialty in physical therapy. The present cost of enrolling in nursing school near Plaintiff's place of residence and obtaining a BS degree is the sum of $8,000.00 with anticipated annual increases.

10. The Plaintiff's minor daughter has suffered from orthopaedic problems since the time of her birth which necessitate, and will continue to necessitate in the future, trips to Salt Lake City, Utah, for checkups and treatment by the doctors there.

. . . .

12. Regardless of the coverage of insurance, Plaintiff will incur expenses in transportation to Salt Lake City from Indiana and back on an annual basis for treatment and examinations.

. . . .

15. The value of the lump sum award at the date of trial discounted pursuant to statute was $95,990.86.

16. The Plaintiff will use $65,000.00 to $75,000.00 of said sum to purchase a home and $8,000.00 to $10,000.00 to attend nursing school and receive a college degree in nursing and go on and obtain specialized training in physical therapy.

17. The education which the Plaintiff desires will make her self-supportive long after the workmen's compensation benefits would run out in 556 weeks, thereby facilitating the production of income.

. . . .

20. The Plaintiff, since the death of her husband, has managed her financial affairs in an efficient and frugal manner and in such a manner that the Court is not apprehensive in giving a lump sum award.

21. The Court does not fear that a lump sum awarded to Plaintiff would be quickly dissipated and the Plaintiff become dependent upon government assistance.

22. The lump sum to the Plaintiff will help facilitate the production of income to her by enabling her to attend school and become self-supporting and also by the fact that she will have an equity in the home she desires to buy rather than by losing the money which she is presently paying in rent.

Defendants have argued that unbridled approval of lump sum awards to widows or widowers for the purpose of buying a home will lead to lump sum demands in every case; that workmen's compensation death benefits will become, in effect, life insurance coverage, and compensation premiums will inevitably increase. We are mindful also that unless proof of purchase is made a part of the court's order, payments presumptively awarded for the purchase of a home may never be so used. There is the further likelihood that if the desire to purchase a home is alone a sufficient basis for granting a lump sum award, the periodic payment provision of the statute may slip into oblivion in cases of this kind, to the total elimination of the three-point standard expressed in *Spidle, Padilla,* and *Codling, supra.*

The supreme court, in *Spidle, supra,* approved the grant of a lump sum award upon the only reason advanced, *i.e.,* that the widow wanted to purchase a larger home for herself and her dependents. In the case now before us, the court found other reasons—an education for the widow which would facilitate the production of income, and potential medical care, and travel necessitated thereby, for the child—to justify the lump sum award. We cannot say, especially because of the *Spidle* decision, that the trial court abused its discretion in entering the lump sum award.

2. Plaintiff's claim of entitlement to a 10% increase rests upon her contention that her husband's employer failed to provide adequate and properly functioning brakes for the front-end loader that rolled down an incline and killed her husband. She says that lack of brake fluid in the master cylinder was the cause of the accident.

A witness testified that dirt around a loose fitting would indicate to him a slow leak, and that when he examined the front

master cylinder after the accident it was dry. There was a puddle of brake fluid found on the ground under the machine at the place where it finally stopped after running into a tree.

We need not decide if an employer's duty to provide a safety device is breached when the safety device, here the vehicle's brakes, fail of their purpose because of lack of brake fluid, or whether the rule of *Jaramillo v. Anaconda Co.*, 95 N.M. 728, 625 P.2d 1245 (Ct.App.1981), applies. We would have to speculate regarding the time when the cylinder became dry, and whether the employer had notice that the fluid had leaked out and that the brakes consequently would not work, to overturn the trial court's findings that "some or all" of the brake fluid leaked out at the point where the machine came to rest, and that it was unknown whether the lack of brakes proximately caused the accident. There is a distinct gap in any evidence that would mandate different findings, or overcome the trial court's conclusion that "[p]laintiff did not establish how Roland Boughton was killed, in relation to the presence or absence of a safety device." Section 52–1–10 requires that the injury or death of the workman must result from the employer's failure to provide a safety device before the 10% penalty can apply. In the absence of a showing of causation, no issue of entitlement to the penalty is raised.

Plaintiff is awarded $1,000 as attorney fees on appeal for successfully defending the attack on her lump sum award.

The judgment is affirmed. IT IS SO ORDERED.

WOOD and HENDLEY, JJ., concur.